**SIO PALELEI, Plaintiff**

**v.**

**STAR-KIST SAMOA, Inc., Defendant**

High Court of American Samoa
Trial Division

CA No. 89-87

June 6, 1990

Before REES, Associate Justice, TAUANU'U, Chief Associate Judge, and OLO, Associate Judge.

Counsel: For Plaintiff, Charles V. Ala'ilima
 For Defendant, John L. Ward II

The facts of this case, except as noted below, are found at 5 A.S.R.2d 162 (1987). In that reported opinion we rendered summary judgment in favor of defendant Star-Kist. The summary judgment was reversed by the Appellate Division on the basis that material facts remained in dispute between the parties. 9 A.S.R.2d 35 (1988).

The allegations in plaintiff's verified complaint which the Appellate Division found to contain his version of the material facts in dispute were as follows:

> 9) On October 9th, 1986, there was a problem in the process which created a backlog of fish at the cleaning tables.
>
> 10) Plaintiff was expected by his supervisor to increase his table's production by placing more baskets of fish on the table than could be reasonably handled by the cleaners.
>
> 11) Plaintiff maintained the normal routine to avoid overloading the cleaners.
>
> 12) A complaint was made that day against plaintiff and he was summarily suspended from his employment by his supervisor, Henry Bernard.

*Id.* at 37. Other material allegations in the verified complaint, not reproduced by the Appellate Division, were as follows:

> 6) On October 9th, 1986, plaintiff was working as a supervisor of one of many tables where baskets of fish were cleaned by fish cleaners.
>
> 7) Plaintiff's job was to ensure that the flow of fish to each fish cleaner was uninterrupted and to account for the number of fish cleaned by each person at his table.
>
> 8) Star Kist rules provided that each basket of fish delivered to each cleaner contained eight fish. Because the size of each fish varied, *employees in plaintiff's position were given the [sic] some discretionary authority to reduce or increase the expected number fish per basket if circumstances warrented [sic].*

The verified complaint further alleges that plaintiff was summarily suspended and later fired without benefit of certain "progressive discipline" procedures outlined in an employee handbook.

121

Defendant's answer was to the effect that plaintiff was "given an immediate written warning when discovered to have been falsifying the fish cleaners' production punch cards"; that plaintiff refused to sign an acknowledgement that he had received this warning; and that he had thereupon been suspended and subsequently terminated. Defendant specifically denied plaintiff's allegation that he had any discretionary authority to reduce or increase the number of fish each cleaner was expected to clean before receiving a punch.

In granting summary judgment we pointed out that the employee handbook specifically excluded certain offenses from the coverage of the "progressive discipline" proceedings. These offenses included "[g]iving or receiving free punches or wrong punches for fish being cleaned" and also "[i]nsubordination or willful disobedience to an order, assignment or instruction." We held that plaintiff and defendant did not materially disagree on the facts: that defendant admitted he had disobeyed the order of a superior with regard to how many punches to give, taking issue only with defendant's *characterization* of the undisputed fact. We therefore found that on the undisputed facts plaintiff been fired either for "insubordination" or for "overpunching," and that he was accordingly not entitled to the progressive discipline procedures set forth in the handbook.

In reversing, the Appellate Division observed that "defendant denies in its answer that plaintiff was terminated for insubordination and plaintiff denies 'over-punching.'" *Id.* at 39. The case was remanded for trial.

Our reading of the Appellate Division's holding is that the material facts in dispute were whether plaintiff had in fact committed either "insubordination" or "overpunching." Since the verified complaint did admit that plaintiff had been "expected by his supervisor to increase his table's production" but chose nevertheless to "maintain[] the normal routine to avoid overloading the cleaners," the dispute boils down to plaintiff's contention that he had "discretionary authority." If he did have such authority, his decision to countermand his supervisor's judgment on how many fish could "be reasonably handled by the cleaners" would amount neither to overpunching nor to insubordination. This is what we expected the trial to be about.

In his testimony at trial, however, plaintiff told an altogether different story than the one set forth in his verified petition. He denied that his supervisor had ordered him to increase the pace of production;

122

indeed, he testified that the day he was suspended was an ordinary day in which fish cleaning was proceeding at its usual pace. He said he was therefore very surprised when someone named Tino brought him a written warning.

Significantly, in his trial testimony plaintiff also denied that he had any discretion about how many fish should be cleaned by each cleaner before a punch was given. He said he was to give one punch per basket of fish; that the speed with which baskets were given to fish cleaners was in somebody else's control; and that he had faithfully followed instructions and had given no free punches.

Defendant Star-Kist put on no direct testimonial evidence of what happened on the fish cleaning floor the day plaintiff was suspended. Defendant did present the written warning itself, which states: "This is to warn you for giving free punches for the cleaners without dumping fish." There is also a place on the warning for the employee to acknowledge receipt of the warning; on this line someone has written, "Refused to Sign." Star-Kist also presented plaintiff's supervisor, Henry Bernard, whose recollection of the event was hazy but who did recall that the charge of "free punches" had involved punches given not just to one or two fish cleaners but to a whole tableful.

From this evidence it appears beyond dispute that plaintiff was in fact charged with "overpunching" rather than with some offense for which progressive disciplinary procedures were applicable. It further appears, according to plaintiff's own admissions in his verified complaint and on the witness stand, that he was actually guilty of overpunching. In his complaint he stated that he had had a disagreement with his supervisor over how many fish the cleaners should be required to clean, and had exercised his "discretionary authority" to require a different pace than the one his supervisor expected. At trial, however, he admitted that he had no such discretion.

Instead of relying on his previously asserted discretion, plaintiff presented a new, different, and inconsistent story: that there had never been any disagreement at all about how many fish should be cleaned. Defendant Star-Kist, however, was entitled to come to trial prepared to defend only against the allegations in the verified complaint, not against a new and different set of allegations. Paragraphs 9 through 11 of the verified complaint, acknowledging that plaintiff did authorize a different number of fish to be cleaned than his supervisor expected of him, were judicial admissions and as such were binding on plaintiff. (Indeed, they

123

were specifically quoted by the Appellate Division as the allegations on which plaintiff was entitled to go to trial.)

In view of plaintiff's admission in the pleadings that he did substitute his own judgment for that of his supervisor about how many fish should be cleaned per basket, and of his admission at trial that he had no discretionary authority to do so, we conclude that he was guilty of "giving free punches or wrong punches," an offense specifically excluded from the progressive disciplinary procedures set forth in the employee handbook. (Defendant's theory in its pleadings ---that giving free punches amounted to "falsification of company records," another offense for which employees can be fired without progressive discipline --- was also sustained by the evidence. It further appears that by refusing to sign the acknowledgment of receipt of the warning when asked to do so by his supervisor, he was guilty of "willful disobedience to an order, assignment, or instruction," yet another such offense.) He has therefore failed to sustain his burden of proving that he was wrongfully discharged.

Finally, however, plaintiff argues that even if he was charged with a "termination" offense rather than a "progressive discipline" offense, he was entitled to an investigation which should include his side of the story. He testified that he never got a chance to tell his story; rather, the personnel director told him each week only to come back the next week, until he was eventually told he had been fired.

At trial defendant Star-Kist did not produce the personnel director --- who was the company's representative in dealing with plaintiff Palelei at all times between the initial warning and the eventual firing, whose affidavit was the principal evidence for its motion for summary judgment, and who now works in Texas for Star-Kist Samoa's parent company. The only evidence presented at trial with respect to the disciplinary investigation, other than the testimony of plaintiff himself, was that of defendant's present personnel director. She testified that company procedure is always to get an employee's side of the story as part of a disciplinary investigation; that this was also company procedure at the time of defendant's termination; and that she has never heard of a case in which this was not done.

Failing to present the testimony of the only person who had direct personal knowledge of the Palelei investigation impresses us as an extremely poor strategic decision. Against a plaintiff who was able to present a reasonably credible and internally consistent account of his allegedly arbitrary firing, it would probably have been fatal to the

124

defendant's case. As it happens, however, the plaintiff did not present such an account. The dramatic changes in plaintiff's story with regard to what happened in the fish room leave us with no confidence in his story about what happened later between him and the personnel director. He had the burden of proof on this as on other questions; although the testimony of defendant's present personnel director amounted only to circumstantial evidence with respect to what probably happened in the Palelei investigation, the totality of the evidence leaves us unconvinced of plaintiff's allegation that he never had a chance to tell his version of events.

Nor, in any event, is it at all clear that any particular disciplinary procedure would be required in the case of an employee who from the outset had signalled his refusal to co-operate in such a procedure by refusing to acknowledge receipt of the written warning which the handbook specifies as its first step.

It is, moreover, difficult to imagine what remedy we could give plaintiff if we were to determine that (a) he had been fired without a hearing, but that (b) after a plenary hearing before the Court, the substantive grounds for his firing had been proved. For Star-Kist to give plaintiff a chance to tell his side of the story at this stage would be superfluous; in its capacity as defendant in the present case, it has already heard two different versions of that story. There is no reason to suspect that such a hearing might have a different result than the judicial hearing that has already been held. Plaintiff has had at least as much process as is due.

Accordingly, the complaint is dismissed and judgment is rendered for the defendant.

It is so ordered.